UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MAE COMMINGS,

    Plaintiff,

v.                                                 CASE NO.:

MIDNIGHT VELVET AND
MONROE AND MAIN,

    Defendant.
_____/

## COMPLAINT

1.     "Robocalls" are the #1 consumer complaint in America today.

2.     In 2016, there were almost 4,000,000 complaints reported to the Federal Communications Commission (FCC) and the Federal Trade Commission (FTC) concerning robocalls—3,857,627 to be exact.[1] In 2015 and 2014, the robocall complaints reached 2,636,477 and 1,949,603, respectively.[2] It is important to recognize these merely reflect the number of individuals that complained to these agencies; the number of people that have been victimized by robocalling abuse could be close to 100,000,000 in the last 3 years.

---

[1] *National Do Not Call Registry Data Book FY 2016, October 1, 2015 – September 30, 2016*, FEDERAL TRADE COMMISSION (Dec. 2016), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2016/dnc_data_book_fy_2016_post.pdf; *Consumer Complaints Data – Unwanted Calls, FCC – Open Data*, FEDERAL COMMUNICATIONS COMMISSION, https://opendata.fcc.gov/Consumer-and-Government-Affairs/Consumer-Complaints-Data-Unwanted-Calls/vakf-fz8e.

[2] *National Do Not Call Registry Data Book FY 2015*, FEDERAL TRADE COMMISSION (Nov. 2015), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2015/dncdatabookfy2015.pdf; *Consumer Complaints Data – Unwanted Calls, FCC – Open Data*, FEDERAL COMMUNICATIONS COMMISSION, https://opendata.fcc.gov/Consumer-and-Government-Affairs/Consumer-Complaints-Data-Unwanted-Calls/vakf-fz8e; *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, FEDERAL COMMUNICATIONS COMMISSION, https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf; *National Do Not Call Registry Data Book FY 2014*, FEDERAL TRADE COMMISSION (Nov. 2014), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2014/dncdatabookfy2014.pdf.

3.     "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014). Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

4.     Paintiff, Mae Commings, alleges Defendants, Midnight Velvet and Monroe and Main, robocalled her more than 500 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 et seq. ("FCCPA").

5.   Robocalls are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

6.     The TCPA was enacted to prevent companies like Midnight Velvet and Monroe and Main from invading American citizens' privacy and prevent illegal robocalls.

7.     Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of

protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; *see also Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

8. According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

9. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

10. The alleged violations described in the Complaint while Plaintiff was in Tampa, Florida.

## FACTUAL ALLEGATIONS

11. Plaintiff is a natural person, and citizen of the State of Florida, residing in Tampa, Florida.

12. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

13. Plaintiff is an "alleged debtor."

14. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

15. Defendants are a corporation with its principal place of business in Wisconsin, and conducts business in the State of Florida.

16. Defendants are a "creditor" as defined by Florida Statute § 559.55(7).

17. The debt that is and the subject matter of this complaint is a "consumer debt" as defined by Florida Statute § 559.55(6) and 15 U.S.C. § 1692(a)(6).

18. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (813) 381-0582.

19. Plaintiff was the "called party" during each phone call subject to this lawsuit.

20. Defendants intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

21. The alleged debt belonged to Plaintiff, arising out of a credit card transaction with Defendants on a credit card account that was primarily used for Mr. Commings' personal, family, or household purposes.

22. In or about May of 2016, Plaintiff received a telephone call to her aforementioned cellular telephone number from Defendants seeking to recover a credit card debt from the Plaintiff.

23. Immediately upon receipt of the calls, after May of 2016, Plaintiff answered a call from Defendants and explained that she felt harassed by all of the calls, and demanded that Defendants stop calling her aforementioned cellular telephone number.

24. In or about May of 2016, during the aforementioned phone conversation with Defendants agent/representative, Plaintiff expressly revoked any express consent Defendants may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

25. Defendants attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

26. Defendants made at least one call to (813) 381-0582.

27. Defendants made at least one call to (813) 381-0582 using an "automatic telephone dialing system" (ATDS).

28. Defendants made at least seventy-five (75) calls to (813) 381-0582.

29. Defendants made at least seventy-five (75) calls to (813) 381-0582 using an ATDS.

30. Defendants made at least one hundred fifty (150) calls to (813) 381-0582.

31. Defendants made at least one hundred fifty (150) calls to (813) 381-0582 using an ATDS.

32. Defendants made at least three hundred (300) calls to (813) 381-0582.

33. Defendants made at least three hundred (300) calls to (813) 381-0582 using an ATDS.

34. Defendants made at least five hundred (500) calls to (813) 381-0582.

35. Defendants made at least five hundred (500) calls to (813) 381-0582 using an ATDS.

36. Each call the Defendants made to (813) 381-0582 in the last four years was made using an ATDS.

37. Each call the Defendants made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

38. Each call the Defendants made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

39. Furthermore, many of the calls at issue were placed by the Defendants using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

40. Plaintiff repeatedly requested the Defendants to stop calling her cell phone, however, the Defendants continued to make calls.

41. Plaintiff's conversations with the Defendants demanding an end to the harassment were ignored.

42. Defendants have recorded at least one conversation with the Plaintiff

43. Defendants have recorded numerous conversations with the Plaintiff.

44. Defendants have made approximately five hundred (500) calls to Plaintiff's aforementioned cellular telephone number from in or about 2016 until today, which will be established exactly once Defendants turn over their dialer records.

45. Despite actual knowledge of their wrongdoing, the Defendants continued the campaign of abusive robocalls.

46. Defendants have been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

47. By effectuating these unlawful phone calls, Defendants have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

48. Defendants aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

49. Defendants phone calls harmed Plaintiff by wasting her time.

50. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." In re: Rules Implementing the TCPA

of 1991, 23 FCC Rcd 559, 562 (2007). Defendants phone calls harmed Plaintiff by depleting the battery life on her cellular telephone, and by using minutes allocated to Plaintiff by her cellular telephone service provider.

51. Defendants corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendants may have mistakenly believed it had.

52. Defendants corporate policy and procedures provided no means for the Plaintiff to have her aforementioned cellular number removed from the call list.

53. Defendants have a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

54. Plaintiff expressly revoked any consent Defendants may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendants placement of the calls.

55. Defendants never had the Plaintiff's express consent for placement of telephone calls to her aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

56. None of Defendants telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

57. Defendants violated the TCPA with respect to the Plaintiff.

58. Defendants willfully or knowingly violated the TCPA with respect to the Plaintiff.

**COUNT I**
**(Violation of the TCPA)**

59. Plaintiff incorporates Paragraphs one (1) through fifty-nine (59).

Case 8:17-cv-01865-EAK-AAS   Document 1   Filed 08/07/17   Page 8 of 9 PageID 8

60. Defendants willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff after she revoked her consent to being called by them using an ATDS or pre-recorded voice.

61. Defendants knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff revoked her consent to being called by them using an ATDS or pre-recorded voice.

62. Defendants, Midnight Velvet and Monroe and Main, repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

63. As a result of Defendants illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

64. Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendants, Midnight Velvet and Monroe and Main, from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendants for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

### COUNT II
### (Violation of the FCCPA)

65. Plaintiff incorporates Paragraphs one (1) through fifty-eight (58). At all times relevant to this action Defendants are subject to and must abide by the law of Florida, including Florida Statute § 559.72.

8

66. Defendants have violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of her family with such frequency as can reasonably be expected to harass the debtor or her family.

67. Defendants have violated Florida Statute § 559.72(7) by willfully engaging in conduct which can reasonably be expected to abuse or harass the debtor or any member of her family.

68. Defendants have violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendantd know that the debt is not legitimate or assert the existence of some legal right when Defendants know that right does not exist.

69. Defendants actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendants for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder of future illegal conduct, and any other such relief the court may deem just and proper.

Respectfully submitted,

Amanda J. Allen
**Amanda J. Allen, Esquire**
Florida Bar No.: 0098228
William "Billy" Peerce Howard, Esquire
Florida Bar No.: 010330
THE CONSUMER PROTECTION FIRM
210-A South MacDill Avenue
Tampa, FL 33609
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Amanda@TheConsumerProtectionFirm.com
Shenia@TheConsumerProtectionFirm.com
*Attorney for Plaintiff*